IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TEKSYSTEMS, INC., )
)
                Plaintiff, )    No. 12 C 10155
   v. )
)     Judge Virginia M. Kendall
RYAN M. LAJINESS and )
INSTANT TECHNOLOGY LLC, )
)
                Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff TEKsystems, Inc. sued Defendants Ryan M. Lajiness and Instant Technology, LLC alleging breach of contract, misappropriation of trade secrets, tortious interference with contract, and equitable accounting. Defendants have moved to dismiss Counts I, III, and IV pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons set forth below, the Defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts are taken from TEKsystems's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 520 (7th Cir. 2003). TEKsystems is in the business of recruiting, employing and providing the services of technical service personnel on a temporary or permanent basis to companies in the Chicago area. (Complaint, Doc. 1 at ¶ 1.) Teksystems' employees who are engaged in the recruitment and placement of potential candidates develop intimate knowledge of Teksystems' clients, financial information, contacts, client needs, and potential candidates. (*Id.*

at ¶ 10.) This information is economically valuable to TEKsystems and would have significant economic value to Teksystems' competitors in the professional recruitment and placement industry. (*Id.* at ¶ 11.) To protect this information, TEKsystems requires its employees who serve as professional recruiters to sign restrictive covenants and non-disclosure agreements as a condition of employment. (*Id.* at ¶ 12.)

On or about December 27, 2010, TEKsystems hired Lajiness for the position of Recruiter Trainee in its Chicago office. (*Id.* at ¶ 13.) He was subsequently promoted to a Recruiter position on April 11, 2011. (*Id.* at ¶ 13.) Through the use of TEKsystems' resources, Lajiness could access and learn the identity of TEKsystems' clients, contacts, billing rates, placement/recruitment history and future staffing requirements, sales and marketing strategies, and the contact information of potential candidates for employment. (*Id.* at ¶ 20.) Lajiness signed an Employment Agreement with TEKsystems, which included non-compete, non-solicit and non-disclosure obligations. (*Id.* at ¶ 22.) The Agreement provided that upon termination of employment, for 18 months, Lajiness was not to engage in, or be employed by, any business within 50 miles of TEKsystems' Chicago office that is engaging in any aspect of TEKsystems' business for which Lajiness performed services or about which he gained confidential information during the two years preceding termination. (*Id.* at ¶ 24.) The non-solicitation covenant contains similar boundaries. (*Id.* at ¶ 24.) The Agreement contains a choice of law provision that states that it should be governed according to Maryland law. (*Id.* at ¶ 27.)

On October 26, 2012, Lajiness resigned from TEKsystems and was hired by Instant Technology. (*Id.* at ¶¶ 28, 31.) Instant Technology is also in the business of recruiting and placing employees to address clients' technology needs. It is a competitor of TEKsystems. (*Id.*

at ¶ 32.) Lajiness holds the same position at Instant Technology that he did at Teksystems. He also works within a 50 mile radius of the TEKsystems' Chicago office. (*Id.* at ¶ 33-34.)

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *See Voelker,* 353 F.3d at 720; *accord Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 619 (7th Cir. 2007). To state a claim upon which relief may be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Detailed factual allegations are not required, but the plaintiff must allege facts that, when "accepted as true ...'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). In analyzing whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *See id.*

## DISCUSSION

Counts I, III and IV of the Complaint assert claims for breach of contract, tortious interference with contract and equitable accounting against the Defendants respectively. Counts I and IV are directed against Lajiness while Count III is directed against Instant Technology.

**I.     The Governing Law**

Before evaluating the merits of Defendants' motion, the Court must determine which state's substantive law applies. In diversity cases, courts apply the choice of law of the forum state to determine how that state's "conflict of law principles treat choice of law clauses in

contracts." *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 330 (7th Cir. 1987); *see also Echo, Inc. v. Whitson Co., Inc*, 52 F.3d 702, 707 (7th Cir. 1995). "Illinois courts honor a contractual choice of law clause provided that (1) it does not contravene a fundamental policy of Illinois and (2) the state chosen bears a reasonable relationship to the parties or the transaction." *LaSalle Bank Nat'l Assoc. v. Paramont Props.*, 588 F.Supp.2d 840, 849 (N.D. Ill. 2008); *see also, e.g., Amakua Develop., L.L.C. v. Warner*, 411 F. Supp. 2d 941, 948 (N.D. Ill. 2006); *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 509 N.E.2d 751, 758 (Ill. App. 1987).

The Agreement explicitly provides that it should be governed according to Maryland law. Maryland bears a reasonable relationship to the parties and the transaction by virtue of the fact that TEKsystems is headquartered in Maryland. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 20 F.3d 713, 719 (7th Cir. 1994) (holding that the state of the principle place of business of one of the parties was a reasonable choice after applying Illinois conflicts of law principles); *rev'd on other grounds*, 514 U.S. 52 (1995); *Sarnoff v. American Home Prods. Corp.*, 798 F.2d 1075, 1082 (7th Cir. 1986) (applying Illinois conflicts of law principles, a defendant former employer "was reasonable in wanting all of its legal obligations with its former employees to be governed by the law of the headquarters state if the employees could be persuaded to agree"). Neither party makes any claim that the choice of Maryland law in the Agreement is a violation of public policy or that Lajiness did not agree to it. Therefore, the Court will follow Maryland law in resolving the motion.

## II.  Breach of Contract Claim Against Lajiness (Count I)

Lajiness moves to dismiss Count I on the grounds that TEKsystems' allegations are based on restrictive covenants which are facially overbroad and unenforceable as a matter of law.[1]

---

[1] Defendants argue for the first time in their reply brief that Maryland's refusal to adopt the doctrine of "inevitable disclosure" requires dismissal of Count I. Under this doctrine, a court may find that disclosure of trade secrets is

4

Under Maryland law, covenants not to compete may be "applied only to those employees who provide unique services, or to prevent the future misuse of trade secrets, routes or lists of clients, or solicitation of customers." *Mansell v. Toys R Us, Inc.*, 673 F. Supp. 2d 407, 416 (D. Md. 2009) (quoting) *Becker v. Bailey*, 268 Md. 93, 97, 299 A.2d 835 (1973)). In determining whether a restrictive covenant in an employment contract is enforceable, courts assess "whether the particular restraint is reasonable on the specific facts." *Padco Advisors, Inc. v. Omdahl*, 185 F. Supp. 2d 575, 577 (D. Md. 2002); citing *Ruhl v. F.A.Bartlett Tree Expert Co.*, 245 Md. 118, 123 (1967). Covenants not to compete will be enforced "if the restraint is confined within limits which are no wider as to area and duration than are reasonable for the protection of the business of the employer and do not impose undue hardship on the employee or disregard the interests of the public." *Id.* (internal quotes omitted); *see also, e.g., Deutsche Post Global Mail, Ltd. v. Conrad*, 292 F. Supp. 2d 748, 756 (D. Md. 2003) ("[U]nder Maryland law restraints in restrictive covenants must be viewed in the context of the hardship imposed on the employees and the necessity of the restraint to protect the employer's interests"). When the scope of a restrictive covenant is considered to be reasonable on its face, courts may, in determining enforceability, assess other facts and circumstances, such as whether the covenant is necessary to prevent the solicitation of customers or the use of trade secrets, assigned routes, or private customer lists; whether there is any exploitation of personal contacts between the employee and customer; and whether enforcement of the clause would impose an undue hardship on the employee or disregard the interests of the public. *Budget Rent A Car of Wash., Inc. v. Raab*, 268 Md. 478,

---

inevitable when a former employee joins a competitor. Courts have enjoined former employees from working for competitors based on this doctrine. However, the applicability of the doctrine is irrelevant here because the parties entered into a non-compete agreement that specifically governs their post-employment relationship. Since the parties entered into an agreement, the agreement governs the availability of injunctive relief.

482 (1973). Therefore, under Maryland law the validity of a restrictive covenant is almost always entirely dependent on the facts of the specific case.

As a result, the Court cannot find the Agreement's restrictive covenant to be facially overbroad as a matter of law at this stage of the proceeding. First, courts applying Maryland law have routinely found restrictive covenants that prevent individuals from joining a competitor located within fifty miles of their prior employer to be facially reasonable. *See, e.g., Teksystems, Inc. v. Bolton,* No. RDB 08 3099, 2010 WL 447782, at *5 (D. Md. Feb. 4, 2010) (holding that a 50-mile prohibition in a restrictive covenant is "facially reasonable under Maryland law."); *The Cleaning Authority, Inc. v. Neubert,* 739 F. Supp. 2d 807, 820-21 (D. Md. 2010) (denying motion to dismiss that argued that 100-mile prohibition in restrictive covenant rendered the covenant unenforceable); *Intelus Corp. v. Barton,* 7 F. Supp. 2d 635, 641 (D. Md. 1998) (finding covenant valid despite absence of geographic limitation); *Hekimian Labs, Inc. v. Domain Sys., Inc.,* 664 F. Supp. 493, 498 (S.D. Fla. 1987) (applying Maryland law and upholding covenant with no geographic limitation); *National Instrument, LLC v. Braithwaite,* No. 24-C-06-004840, 2006 WL 2405831 (Md. Cir. Ct. 2006) (finding covenant that restrict employee from competing in North America to be valid).

Courts applying Maryland have similarly concluded that an 18 month duration in a restrictive covenant is facially reasonable. *See Bolton,* 2010 WL 447782, at *5 ("The covenant is not overbroad in terms of its 18-month duration."); *Padco Advisers,* 179 F. Supp. at 606 (finding two-year restriction to be reasonable); *Corporate Healthcare Fin., Inc. v. BCI Holdings Co.,* No. CCB-05-3391, 2006 WL 1997126, at *7 (D. Md. July 13, 2006) (finding that a three-year restriction was reasonable considering the nature of the business and sophistication of the

parties);*Gill v. Computer Equipment Corp.,* 266 Md. 170, 181 (1972) (finding two-year restriction enforceable). Therefore, the restrictive covenant is not facially overbroad.

Indeed, a United States District Court from the District of Maryland recently concluded that a restrictive covenant almost identical to the one at issue here was valid. In reaching this conclusion the *Bolton* court found that the restrictive covenant was narrowly tailored because while "TEK operates on a nationwide and international level," the covenant merely sought to prevent the defendant from competing in the specific area where he was previously employed. *See Bolton,* 2010 WL 447782, at *5. Such a restriction was necessary to protect TEK's business interests because "[a] company's success in the IT-staffing industry depends overwhelmingly upon the ability of its employees to make and maintain personal connections with clients." *Id.* at *6. An employee will more likely have made and maintained personal connections with TEK's clients in the geographic region that the employee worked in. Thus, a restrictive covenant with a 50-mile prohibition is narrowly tailored to guard against the former employee poaching those clients. Moreover, the *Bolton* court found the 18-month duration to be reasonable because the information the employee departed with would not be stale during this period. *Id.* at *5. This Court agrees with the *Bolton* court and finds the restrictive covenant at issue to be sufficiently tailored to only protect TEK's client relationships that Lajiness could potentially undermine based on his previous employment with TEK. It is therefore not facially overbroad.

Lajiness's attempts to distinguish *Bolton* are unpersuasive. He claims that regardless of geographic and temporal restrictions, the *Bolton* agreement specifically delineated the types of business in which the former employee could not engage, while the Agreement's restrictive covenant impermissibly forbids Lajiness from working in any capacity for a competitive

7

business.  It is the Agreement's "in any capacity" language, argues Lajiness, that makes the covenant impermissibly overbroad.  However, this argument fails for three reasons.

First, in arguing his point, Lajiness omits a key phrase of the covenant: that "employee shall not directly or indirectly engage in ... any business that is engaging in or preparing to engage in any aspect of TEKsystems's business *for which employee performed services or about which employee obtained confidential information*..." (emphasis added).  Therefore, the clause does not on its face prohibit ex-employees from working "in any aspect" for a competing business as Lajiness claims.  Indeed, it renders Lajiness's repeated claims that he could not work as a janitor for a competing business specious. Instead, the restrictive covenant prohibits former employees from working for a competing business on matters about which they gained specialized or confidential knowledge while employed at TEKsystems.   While the Court agrees that the language here is not as specific as that in *Bolton*, it is sufficiently limiting for the Court to find the clause to not be facially overbroad at this early stage in the case.

Second, even if the non-compete clause prohibited Lajiness from working "in any capacity" for competing companies, his argument remains unpersuasive in light of the fact that Maryland courts have, under certain factual circumstances, upheld restrictive covenants that generally restrict former employees from seeking to secure employment with competitors.  *See, e.g., Intelus*, 7 F. Supp. 2d at 642 (enforcing covenant with no geographical limitation that restricted employee from working for one of the company's direct competitors); *PADCO Advisors, Inc.*, 179 F. Supp. 2d at 608 (same).

Finally, if the "in any capacity" language were to prove unduly restrictive following further development of the facts at issue in this case, Maryland law "permits courts to 'blue pencil,' or excise language from restrictive covenants that is unnecessarily broad" so long as the

8

editing is "limited to removing the offending language without supplementing or rearranging the remaining language …" *See McGovern v. Deutsche Post Global Mail, Ltd.*, No. JFM-04-0060, 2004 WL 1764088 at *8 (D. Md. Aug. 4, 2004) (citing *Tawney v. Mut. Sys. of Maryland, Inc.*, 47 A.2d 372, 379 (Md. 1946) and *Fowler v. Printers II, Inc.,* 598 A.2d 794, 802 (Md. App. 1991)). Defendants' argument that impermissible supplemental language would be required to cure the defects in the Agreement's restrictive covenant is contradicted by Defendants' repeated references to the specific "in any aspect" phrase as the basis for the clause's overreach. Taking Defendants' argument at face value, presumably the offending phrase could be removed under the "blue pencil" option and cure the defect. Any such determination would be premature at this early stage in the case, but Defendants cannot claim that alleged defects in the restrictive covenants that they highlight are incurable under Maryland law such that dismissal is warranted.

The complaint sufficiently alleges that Lajiness had significant contact with confidential information and personal contacts with clients and customers at TEKsystems, and moved from a position at TEKsystems to similar position with a competitor engaged in the same area of business with similar clientele. Given those similarities, the Agreement's restrictive covenants are not clearly and incurably facially overbroad at this stage of the case such that the breach of contract claim can be dismissed.

### III. Tortious Interference With Contract Claim Against Instant Technology (Count III)

Instant Technology's motion to dismiss Count III of the complaint relies entirely upon same enforceability arguments regarding the restrictive covenants in the Agreement that Lajiness raised with respect to Count I. Because the restrictive covenants in the Agreement are not facially overbroad at this stage of the proceedings, the tortious interference claim will not be dismissed for the same reasons set forth above.

**IV.     Equitable Accounting Claim Against Lajiness (Count IV)**

Finally, Lajiness seeks dismissal of TEKsystems' equitable accounting claim for failure to demonstrate the absence of an adequate remedy at law due to TEKsystems' prayer for damages in addition to injunctive relief.    Under both Maryland and Illinois law, a suit in equity for an accounting may be maintained only when remedies at law are inadequate.  *P.V. Props, Inc. v. Rock Creek Village Assocs. Ltd. Pshp.*, 77 Md. App. 77, 89 (1988) (citing *Nagel v. Todd*, 185 Md. 512 (1946)); *Compak Cos., LLC v. Johnson*, No. 03 C 7427, 2011 WL 1654269 at *18 (N.D. Ill. Apr. 28, 2011).

Even taking the facts in the light most favorable to TEKsystems, TEKsystems' claim for an equitable accounting fails because TEKsystems has an adequate remedy at law.  As the basis for its equitable accounting claim, TEKsystems points to the formula included in the Agreement that requires Lajiness to obtain and compute the gross profits and gross sales that Lajiness obtained through the breach of the Agreement.   (Cmplt. at ¶ 63).   The use of this formula necessarily requires TEKsystems to prove its breach of contract claim.   Should TEKsystems prevail, the formula in the Agreement and the calculations required thereby will form all or part of TEKsystems' damages for breach.  But the formula is inherently part of the Agreement and does not provide TEKsystems with a separate right of action.  Thus while the breach of contract claim remains, Count IV must be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Partial Motion to Dismiss is granted with prejudice with respect to Count IV and denied with respect to Counts I and III.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 8, 2013